**Lindsey Alyn CRUMPTON, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1634–07.**

Court of Criminal Appeals of Texas.

Dec. 9, 2009.

Rehearing Denied Feb. 3, 2010.

Robert Udashen, Dallas, for Lindsey Alyn Crumpton.

Amy Sue Melo Murphy, Jeffrey L. Van Horn, State's Attorney, Austin, for The State of Texas.

WOMACK, J., delivered the opinion of the Court, in which JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The issue is the propriety of a deadly-weapon finding in a judgment of guilt of the offense of criminally negligent homicide. The Court of Appeals upheld the finding. *Crumpton v. State*, No. 05-06-01673-CR, 2007 WL 2460085 (Tex.App.-Dallas 2007) (not designated for publication).

The one-count indictment alleged (and the evidence showed) that the appellant did "cause the death of an individual ... by driving her motor vehicle, a deadly weapon ... to ... strike and collide with the complainant's motor vehicle."

The jury's verdict was, "We, the jury[,] find the defendant guilty of criminally negligent homicide, as included in the indictment."

The jury's verdict was a finding that the defendant used a deadly weapon. One reason is that the verdict expressly found the defendant guilty of the offense "as included in the indictment." The indict-ment expressly alleged that the defendant committed the offense with "a deadly weapon." The verdict's reference to the indictment therefore constituted a finding that that allegation was true.

Another reason is that a verdict of homicide necessarily is a finding that a deadly weapon was used. The statutory definition of "deadly weapon" includes "*anything* that in the manner of its use ... is capable of causing death ...." Penal Code section 1.07(a)(17)(B). Having found that the defendant was guilty of homicide, the jury necessarily found that the defendant used something that in the manner of its use was capable of causing—and did cause—death. Therefore the verdict was an adequate basis for the trial court's entry of the deadly-weapon finding in the judgment.

Today's decision is consistent with, and was foreshadowed by, our decision in *Blount v. State*, 257 S.W.3d 712 (2008), in which we held that an allegation that the defendant committed or attempted to commit aggravated assault was adequate notice that there would be an issue of his exhibition or use of a deadly weapon since each manner of committing aggravated assault involves the use of a deadly weapon.

A dissenting opinion [1] makes two points, neither of which rebuts our reasoning. One is that, in *Ex parte Beck*, this court said in dicta that, "had the jury not answered a special issue that the gun was a deadly weapon there would have been no affirmative finding of deadly weapon made, even upon the return of 'guilty as charged in the indictment.'" But the statement in *Beck* was based on a holding that we expressly rejected just last year in *Blount*. The *Beck* opinion said that "where there is no allegation in the indictment which comports with the definition of deadly weapon

---

1. Opinion of Keller, P.J., *post*.

as set out in § 1.07(a)[17](B) [of the Penal Code], the defendant is clearly *not* put on notice that there will be an issue in the case concerning use or exhibition of a deadly weapon."[2] In *Blount* we held the opposite, as we have said above.

The dissenting opinion's other point is that a verdict's finding of "guilty as charged in the indictment" (or, in this case, "as included in the indictment") may not be a finding that a deadly weapon was used. Again, this reasoning is inconsistent with *Blount* and the express language of the deadly-weapon statute. If a deadly weapon is anything that is capable of causing death or serious bodily injury, and the indictment alleges that the defendant caused death or serious bodily injury, and the jury finds the defendant guilty as charged in the indictment, the verdict is necessarily a finding that a deadly weapon was used.

The only thing that today's decision adds to our holding in *Blount* is the decision that the jury's verdict was an adequate basis for the trial court's entry of the affirmative finding in the judgment under the statutes which require such findings.[3] This decision follows naturally and easily from the holding of *Blount.*

The difficult question (which neither dissenting opinion addresses) would be: In the face of such statutory requirements for deadly-weapon findings, how could a jury convict a defendant of a homicide (and a trial court enter a judgment for that offense) *without* finding that a deadly weapon was used? There might be a possibility of an illogical and inconsistent act of clemency by a jury, which might have the power to so act in answering a special verdict about the use of a deadly weapon. But in this case the jury entered a verdict which affirmatively supports the trial court's judgment that a deadly weapon was used.

We affirm the judgment of the Court of Appeals.

HERVEY, J., filed a concurring opinion, in which KEASLER and COCHRAN, JJ., joined.

KELLER, P.J., filed a dissenting opinion, in which PRICE and HOLCOMB, JJ., joined.

MEYERS, J., filed a dissenting opinion.

HERVEY, J., filed a concurring opinion in which KEASLER and COCHRAN, JJ., joined.

The court of appeals decided that the jury's application-paragraph findings and the verdict form constituted an express deadly-weapon finding under this Court's decision in *Lafleur v. State,* 106 S.W.3d 91 (Tex.Cr.App.2003).[1] I agree.

---

2. *Ex parte Beck,* 769 S.W.2d 525, 528 (Tex.Cr. App.1989).

3. Article 42.12 of the Code of Criminal Procedure refers to such a case—"When it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used ... during the commission of a felony offense ..., and that the defendant used ... the deadly weapon"— and section 3g(a)(2) of that article says, "On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court."

Correspondingly, Article 42.01, sec. 1 says, "The judgment shall reflect: ... 21. Affirma-tive findings entered pursuant to Subdivision (2) of Subsection (a) of Section 3g of Article 42.12 of this code."

1. *See Crumpton v. State,* No. 05–06–01673–CR, slip op. at 8–9, 2007 WL 2460085 (Tex. App.-Dallas, delivered August 31, 2007) (not designated for publication) ("[T]he jury in this case could not have found appellant guilty of criminally negligent homicide, as included within the manslaughter indictment, without also expressly deciding she used her motor vehicle, a deadly weapon. [Footnote omitted]. The reference to the indictment in both the application paragraph and in the verdict

The charged manslaughter-offense indictment, in relevant part, alleged that appellant recklessly caused the complainant's death "by driving her motor vehicle, a deadly weapon" into the complainant's vehicle. The contested issue at trial was whether appellant drove her motor vehicle recklessly or negligently. In the jury-charge application paragraph on the lesser-included offense of criminally negligent homicide, the jury was instructed to find appellant guilty of "criminally negligent homicide as included in the indictment" if it found that appellant caused the complainant's death by criminal negligence. In its verdict form, the jury found appellant "guilty of criminally negligent homicide, as included in the indictment."

Although the jury-charge application paragraph on the lesser-included offense of criminally negligent homicide did not precisely track the language of the indictment, as was the case in *Lafleur*,[2] I believe that the reasoning of *Lafleur* still applies to this case. In this case, the reference in the application paragraph to the indictment with its "included in the indictment" language brings this case within *Lafleur*, because this was the equivalent of instructing the jury to find appellant guilty of criminally negligent homicide if it found that appellant negligently caused the complainant's death "by driving her motor vehicle, a deadly weapon" into the complainant's vehicle. *See Lafleur*, 106 S.W.3d at 99 ("In this case, the combination of: 1) the indictment which alleged 'a deadly weapon: to wit, a firearm'; 2) the jury charge application paragraph of the lesser-included offense of manslaughter that required a finding, beyond a reasonable doubt, that the appellant used 'a deadly weapon: to-wit, a firearm'; and 3) the jury's verdict, that appellant was guilty of the lesser-included offense of manslaughter, contained an express finding that appellant used a firearm, which is a deadly weapon *per se*, to cause the complainant's death.").

I believe that an examination of the manslaughter indictment, the application paragraph on the lesser charge of criminally negligent homicide, and the verdict form indicates that the jury could not have found appellant guilty of criminally negligent homicide without also expressly deciding that she drove her "motor vehicle, a deadly weapon." *See Lafleur*, 106 S.W.3d at 98 (purpose of ensuring an "express finding" of a deadly weapon is satisfied by looking to the explicit requirements of the application paragraph, the indictment and the verdict form). Any other decision would exalt "form over substance to no discernible jurisprudential purpose." *See Lafleur*, 106 S.W.3d at 98.

In addition, I agree with the Court's opinion that the reasoning of this Court's decision in *Blount v. State*[3] supports a decision that "a verdict of guilt in a homicide case may be an affirmative finding that a deadly weapon was used, since causing death by an act (as distinguished from an omission) necessarily requires the use of a deadly weapon." *See* Maj. op. at 664. With these comments, I join the Court's opinion deciding that the jury made an

---

form is sufficient to constitute an express finding by the jury a deadly weapon was used during the commission of the offense and, thus, sufficient to support a deadly weapon finding in the judgment.").

**2.** In *Lafleur*, the murder indictment alleged that the defendant committed the offense with "a deadly weapon, to-wit: a firearm" and the

application paragraph on the lesser-included offense of manslaughter required a finding that the defendant used "a deadly weapon: to-wit, a firearm." *See Lafleur*, 106 S.W.3d at 92–93, 99.

**3.** 257 S.W.3d 712 (Tex.Cr.App.2008).

express finding that appellant used a deadly weapon.[4]

KELLER, P.J., filed a dissenting opinion in which PRICE, and HOLCOMB, JJ., joined.

Whether the defendant has notice that a deadly weapon finding may be entered, and whether the jury actually makes a deadly weapon finding, are entirely separate issues. The Court conflates the two issues, relying upon a notice case—*Blount v. State*[1]—to establish that an affirmative finding was actually made. The problem is that *Blount* relied squarely upon *Ex parte Beck*[2] for its notice holding,[3] and *Beck* specifically explained that its holding with respect to notice did not affect the requirements for making an affirmative finding:

> At this juncture, it is appropriate to comment on Judge Clinton's concurring opinion which concludes that it is *Polk v. State*, 693 S.W.2d 391 (1985), which is being modified or overruled. Such a notion might lead to some confusion if left unrebutted.

> To understand the difference between notice and affirmative finding, it is helpful to mentally compartmentalize the "notice of a deadly weapon issue" apart from the "affirmative finding issue." The concept of notice that there will be a deadly weapon issue in the case is the concern of today's majority opinion and of *Ex Parte Patterson*, *supra* [740 S.W.2d 766 (Tex.Crim.App.1987) ]. This notice concept is totally divorced from

the "affirmative finding of a deadly weapon" body of law that has emerged with the *Polk, supra,* line of cases.

Affirmative finding law emerged as a child of Article 42.12 of the Code of Criminal Procedure. It is solely the result of the insertion of the word "affirmative" in that statute, and has no link to any concept of notice. In fact, nothing in Article 42.12 or in the *Polk* line of cases prohibits an entry of an affirmative finding without prior notice to the accused. An affirmative finding is just that: a finding that is affirmatively made. This can be accomplished by: (1) A jury's answer to a special issue, or (2) by a finding of "guilty as charged in the indictment." In the latter case, the indictment must also contain an averment of a deadly weapon, or a named deadly weapon per se.

Notice that there will be a deadly weapon issue in the case happens to be given, under our holding today, in the above latter case (i.e. when the indictment contains an averment of deadly weapon or a named deadly weapon per se). But the fact that common wording concerning a deadly weapon in the indictment may satisfy the affirmative finding requirement of *Polk* and also satisfy the notice requirement of today's holding in no way merges the two separate and distinct bodies of law.

In sum, in the case at bar, the averment in the indictment [causing the death of the complainant by shooting him with a gun] gave appellant notice that the State

4. Any prior decisions by this Court requiring a contrary decision, as discussed in Presiding Judge Keller's dissent, should be overruled as being inconsistent with our more recent decisions in *Blount* and *Lafleur*. See *Awadelkariem v. State*, 974 S.W.2d 721, 725 (Tex.Cr. App.1998) ("When older precedent conflicts with a newer decision that is found to be more soundly reasoned, we may resolve the

inconsistency in favor of the more soundly reasoned decision.").

1. 257 S.W.3d 712 (Tex.Crim.App.2008).

2. 769 S.W.2d 525 (Tex.Crim.App.1989).

3. 257 S.W.3d at 713–14.

would attempt to prove that the named gun was used in a manner that caused death and therefore was a deadly weapon. The notice requirement espoused in *Patterson*, as modified today, is therefore satisfied. By contrast, had the jury not answered a special issue that the gun was a deadly weapon, there would have been no affirmative finding of deadly weapon made, even upon the return of a verdict of "guilty as charged in the indictment." *Polk, supra.* But since a special issue was so answered, the affirmative finding was properly entered, and appellant does not challenge the entry of an affirmative finding on that ground.[4]

I would also point out that, in the earlier case of *Ex parte Brooks*, this Court held that an affirmative finding of a deadly weapon was *not* made by the jury finding the defendant "guilty of murder by then and there intentionally or knowingly causing the death of an individual, ..., by shooting him with a gun."[5] Because a "gun" was not a deadly weapon per se, we held that none of the methods outlined in *Polk* for making a deadly weapon finding were utilized.[6] So the jury's verdict did not constitute an express finding that a deadly weapon was used or exhibited, as required by the statute.[7]

The Court incorrectly equates the concept of "as included in the indictment" with the concept of "as charged in the indictment." The Court makes the unwarranted assumption that the deadly-weapon allegation is one of the included allegations rather than one of the excluded allegations. This assumption is a logical nonsequitur and, as noted above, it is not allowed by our caselaw.

The Court argues that when a jury finds true an allegation that the defendant caused a death, the verdict is necessarily a finding that a deadly weapon was used. This is an appealing argument, but it is contrary to our caselaw. It is also refuted to some extent by the answer to the question posed by the Court itself: a jury has the ability to find a defendant guilty of causing a death but at the same time answer a deadly-weapon special issue in the negative. This may mean that the verdict and the answer to the special issue are inconsistent, but that inconsistency is allowed because the statute requires an "affirmative" finding.

The Court's opinion also seems to me to be inconsistent with the reasoning in *Hooks v. State.*[8] Hooks was charged with aggravated assault by threat with a deadly weapon, to-wit a firearm.[9] The trial court found her guilty as charged and placed her on probation.[10] Hooks argued that she was not eligible for probation because the trial court effectively made an affirmative deadly weapon finding by determining that she was guilty of the charged offense.[11] This Court disagreed, holding that as long as no affirmative finding was *entered* in the judgment, Hooks was eligible for probation.[12] While this holding focused on the difference between making an affirmative finding and entering an affirmative finding,

---

4. *Beck,* 769 S.W.2d at 527–28 (bracketed material in original).

5. 722 S.W.2d 140, 141 (Tex.Crim.App.1986)(ellipsis in original).

6. *Id.* at 142.

7. *Id.*

8. 860 S.W.2d 110 (Tex.Crim.App.1993).

9. *Id.* at 111.

10. *Id.*

11. *Id.*

12. *Id.* at 113–14.

the Court also discussed how affirmative findings could be made. We said:

> *Polk v. State*, 693 S.W.2d 391 (Tex.Cr. App.1985), is regarded as the seminal opinion on the "making" part of the subject, i.e., how an affirmative finding is made. The Court used *Polk* as the vehicle to reject "implied findings" of a deadly weapon. Rather, it insisted there be an "express determination" that a deadly weapon was used or exhibited, and delineated three manners by which "an affirmative finding may properly be made" when a jury is fact-trier.[13]

Since the jury in this case was the trier of fact, the question becomes whether it *made* a finding that a deadly weapon had been used. If it did not, then the trial court had no authority to enter such a finding. The Court says, "The jury's verdict was a finding that the defendant used a deadly weapon." But under *Polk* and *Brooks*, the jury's verdict of guilt of a lesser-included offense in this case does not constitute a finding of deadly-weapon use. And since a deadly-weapon finding was not made by the jury, the trial court was without authority to enter one.

The holdings in *Polk* and *Brooks* are consistent with the discussion in *Beck* and inconsistent with the Court's holding today. To hold as it does today, the Court must overrule *Polk* and *Brooks*, and it must explain away the thoughtful discussion in *Beck*. These are things the Court's opinion does not purport to do.

I respectfully dissent.

MEYERS, J., filed a dissenting opinion.

The issue before the Court is whether an express deadly-weapon finding exists when a defendant is found guilty of a lesser-included offense and the jury has seen a deadly-weapon clause in the indictment for the greater offense and in the application paragraph for the greater offense, but never in association with the lesser-included offense (including the application paragraph for the lesser-included offense).

Without examining any of this Court's precedent on the issue (*Lafleur v. State*, 106 S.W.3d 91 (Tex.Crim.App.2003); *Polk v. State*, 693 S.W.2d 391 (Tex.Crim.App. 1985)), the majority concludes that the jury made an express deadly-weapon finding because the indictment for the greater offense mentioned a deadly weapon. The majority has conducted a bookend, skeletal analysis, quoting the indictment and the verdict form, but ignoring the application paragraphs entirely. This is peculiar considering that Appellant's petition to this Court and our precedent both emphasize the critical importance of the application paragraph content. *Id.* To simply connect the indictment to the verdict, as the majority does, and skip over the intermediate material that the jury considered, yields an incomplete analysis.

Furthermore, I am clueless as to how *Blount v. State*, 257 S.W.3d 712 (Tex.Crim. App.2008), affects the disposition of this case. Somehow this Petition for Discretionary Review has been turned on its head. Appellant does not claim that she lacked notice of the deadly-weapon issue, but rather that the jury did not make an express deadly-weapon finding in association with her conviction for a lesser-included offense.

This is a complicated question which requires a deeper analysis of the jury charge herein and controlling case law. Because I would decide this case differently (*see* Exhibit A), I respectfully dissent.

---

**13.** *Id.* at 112 (footnotes omitted).

## EXHIBIT A

Appellant, Lindsey Alyn Crumpton, was charged with manslaughter. The jury charge at the guilt stage included an application paragraph on the lesser-included offense of criminally negligent homicide. The jury found Appellant guilty of criminally negligent homicide and assessed punishment at ten years' confinement. Appellant appealed, arguing that because the jury never made an express deadly-weapon finding, her punishment range was improperly enhanced to a third degree felony. The court of appeals affirmed the trial court, concluding that the jury had made an express deadly weapon finding, and that therefore, Appellant's punishment range was properly calculated. We granted review to evaluate whether the jury made an express deadly weapon finding. I would reverse and remand.

## I. Facts

While driving in her Ford Explorer southbound on Interstate 35, Appellant crossed the median into northbound traffic and crashed into a Chevrolet Impala. The driver of that car died after sustaining blunt force injuries in the wreck. The officer who arrived at the scene, Bryan Dorsey, checked both drivers for consciousness, extinguished a fire in the deceased's car, and asked basic questions of Appellant. When he began to walk away from Appellant, she grabbed his shoulder, pulled him back toward her, and told him that she was attempting suicide when she drove across the median. Appellant later repeated this statement to one of the responding paramedics, Jared Karr, on the ambulance ride to the hospital. In response, Karr asked if she meant that the wreck was on purpose, and Appellant confirmed that it was. Appellant also informed Karr that prior to driving, she had taken twenty ibuprofen, four Tylenol, and six Benedryl. A second paramedic treating Appellant in the ambulance, Rusty Lee Johnson, asked Appellant if she had crashed on purpose, and she responded, "Yes." Johnson asked her again to make sure he heard correctly, and she confirmed that she had intended to crash her car. Appellant testified that while she intended to commit suicide by flipping her car on the highway, she did not intend to crash into the deceased's car.

## II. The indictment, jury charge, and judgment

### A. Indictment

The indictment charged manslaughter and read:

Defendant . . . did recklessly cause the death of an individual, [the deceased], hereinafter called complainant, by driving her motor vehicle, a deadly weapon, off of the highway, causing her motor vehicle to move into the opposing lane of traffic and strike and collide with the complainant's motor vehicle, against the peace and dignity of the State.

### B. Jury charge—application paragraph at guilt

The application paragraph in the jury charge on the lesser-included offense of criminally negligent homicide read:

Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt, that on or about November 9, 2004, in Dallas County, Texas, the defendant, caused the death of [the deceased] by criminal negligence, then you will find the defendant guilty of criminally negligent homicide as included in the indictment.

### C. Jury charge—verdict form at guilt

The jury found Appellant guilty of the lesser-included offense of criminally negligent homicide. The verdict form read:

We, the jury, find the defendant guilty of criminally negligent homicide, as included in the indictment.

### D. Jury charge—verdict form at punishment

The verdict form at punishment, in which the jury assessed punishment at ten years' confinement, defined the sentencing range as two to ten years. Criminally negligent homicide is categorized as a state jail felony, which is punishable by confinement for a term between 180 days and two years, with the option of a fine not to exceed $10,000. Tex. Penal Code Ann. §§ 12.35, 19.05 (Vernon 2003). However, section 12.35(c) provides that "An individual adjudged guilty of a state jail felony shall be punished for a third degree felony" if at the trial it was shown that "a deadly weapon ... was used or exhibited during the commission of the offense ... and that the individual used or exhibited the deadly weapon...." Tex. Penal Code Ann. § 12.35(c) (Vernon 2003). The punishment for a third degree felony, as defined by section 12.34, is a range of two to ten years' confinement, with the option of a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.34 (Vernon 2003). Therefore, Appellant received a punishment correlative to a third degree felony.

### E. Judgment

The trial judge entered a deadly-weapon affirmative finding in the judgment.

### III. Appeal

At the Fifth Court of Appeals, Appellant asserted the following two arguments: (1) The jury never made an express finding of a deadly weapon because the words "dead-ly weapon" did not appear in the jury charge in association with the lesser-included offense, and although "deadly weapon" did appear in the indictment, Appellant was not convicted of the charge alleged in the indictment; and (2) because there was no express finding of a deadly weapon, the punishment range was improperly enhanced from a state jail felony to a third degree felony.

The court of appeals concluded that because the application paragraph and the verdict form referred to the indictment, which included deadly-weapon language, the jury made an express finding that a deadly weapon was used during the commission of the offense. *Crumpton v. State,* No. 05–06–01673–CR, 2007 WL 2460085, at *5, 2007 Tex.App. LEXIS 7089, at *14 (Tex.App.-Dallas Aug.31, 2007, pet. granted) (not designated for publication). The resolution of the first issue determined the resolution of the second. Because the court concluded that the jury did make an express deadly-weapon finding, Appellant's punishment range could be properly enhanced from a state jail felony to a third degree felony. *Id.* at *5, 2007 Tex.App. LEXIS 7089, at *16. Appellant presented the same two issues to this Court.

### IV. Whether the trial court properly entered a deadly-weapon affirmative finding in the judgment based upon an express finding from the jury that a deadly weapon was used during the commission of the offense

#### A. Appellant's argument

Appellant's first issue pertains to the deadly-weapon affirmative finding in the judgment.[1] She argues that the jury

---

1. Both "express" and "affirmative" may be used to describe the deadly-weapon finding at issue. We said in *Polk v. State,* 693 S.W.2d 391, 393 (Tex.Crim.App.1985), that an "affirmative finding" means "the trier of fact's *express* determination that a deadly weapon

charge did not include a deadly-weapon clause related to the lesser-included offense, so therefore, the jury never made an express deadly-weapon finding. Appellant explains that the language of the indictment cannot compensate for the inadequacies of the jury charge because she was not convicted of the offense in the indictment.

### B. *Polk*

We confirmed the importance of an express finding in *Polk* and stated that no longer could "the facts of the case . . . permit an 'implied' affirmative finding." *Polk*, 693 S.W.2d at 396. *Polk* outlined three circumstances indicative of an express deadly-weapon finding.

> Where the jury is the trier of fact, the trial court may not properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless:
>
> 1) the deadly weapon or firearm has been *specifically* pled *as such* (using the nomenclature "deadly weapon") in the indictment (Applies where the verdict reads "guilty as charged in the indictment" (citation omitted));
>
> 2) where not specifically pled in "1)" above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or,
>
> 3) a special issue is submitted and answered affirmatively.

*Id.*

In *Polk*, one offense—attempted murder—remained consistent throughout the case, from the indictment through the judgment. *Id.* at 393. However, when a defendant is convicted of a lesser-included offense, *Polk*'s first basis for an express finding is not applicable; the verdict form will not read "guilty as charged in the indictment" because the defendant is not found guilty of the offense in the indictment. In *Lafleur v. State*, 106 S.W.3d 91, 92 (Tex.Crim.App.2003), we reaffirmed *Polk*, but acknowledged the need to adapt its analysis to accommodate the lesser-included offense scenario.

### C. *Lafleur*

In *Lafleur*, the indictment charging murder, the application paragraph on the lesser-included offense of manslaughter, and the judgment of conviction for manslaughter all featured a deadly-weapon clause. *Id.* at 92–93. However, the verdict form did not mention a deadly weapon, and the appellant argued that the trial judge erred by entering a deadly-weapon finding in the judgment when the jury's verdict had not mentioned the use of a deadly weapon. *Id.* at 93.

We concluded that the indictment, the application paragraph, and the verdict form could all be considered when detecting an express finding. *Id.* at 98. The absence of the words "deadly weapon" in the verdict form did not rule out an express finding because the manslaughter application paragraph re-introduced the deadly-weapon allegation to the jury in the new context of the lesser-included offense. Our holding read:

> [C]ourts may look to the application paragraph of a lesser-included offense to determine if the express deadly[-]weapon allegation in that portion of the jury charge matches the deadly[-]weapon al-

---

. . . was actually used or exhibited during the commission of the offense." The task of creating an affirmative finding is two-fold: the fact finder, the jury in this case, makes an

express determination as to the use of a deadly weapon, and then the trial court judge enters the deadly weapon affirmative finding in the judgment.

legation in the indictment for the charged offense. If so, the trial court may enter a deadly[-]weapon finding in the judgment based upon the jury's verdict of guilt on the lesser-included offense.

*Id.* at 92.

The significant distinction between *Lafleur* and the case at hand is the language of the application paragraph on the lesser-included offense. The *Lafleur* application paragraph read, in relevant part: "the de-fendant Michael Winn Lafleur, did then and there recklessly cause the death of an individual ... by shooting complainant with a deadly weapon, to-wit: a fire-arm...." *Id.* at 93. In Appellant's case, there is no mention of a deadly weapon in the application paragraph for the lesser-included offense; the application paragraph and verdict form merely refer back to the indictment by stating, "as included in the indictment." The following chart summarizes the use of "deadly weapon" in *Lafleur* and in the case at hand:

| | Did "deadly weapon" appear in ↓: | *Lafleur* | *Crumpton* |
|---|---|---|---|
| | Indictment charging greater offense | Yes | Yes |
| Jury Charge | Application paragraph on lesser-included offense | Yes | No |
| | Verdict form in which jury finds defendant guilty of lesser-included offense | No | No |
| | Judgment of conviction | Yes | Yes |

## D. Analysis

We must decide whether our holding in *Lafleur* can be expanded to allow an express finding when both the application paragraph and the verdict form lack a deadly weapon clause. In other words, can we allow the indictment to carry the deadly-weapon language through to the judgment when the defendant is ultimately convicted of a lesser-included offense, not the offense in the indictment?

The State asks us to hold that "a jury makes an express deadly[-]weapon finding where the verdict form or the application paragraph on the lesser-included offense specifically refers to the indictment, and the indictment includes a deadly[-]weapon allegation." But I find that this proposal renders an express finding too dependent upon the indictment for the greater offense.[2] For the lesser-included offense context, I conclude that the indictment cannot be the only documentation of a deadly weapon presented to the jury before the judgment. Here, as in *Polk*, "there was no way for the trial judge to determine with any certainty what, exactly, the jury had found regarding" a deadly weapon. *Id.* at 95.

**2.** This would not be a problem if the conviction were not for a lesser-included offense; *Polk* specifically endorsed a reference to the indictment in a verdict form. *Polk*, 693 S.W.2d at 396. But importantly, that was when the reference in the verdict form could read "as charged in the indictment," because the offense remained the same from indictment to judgment. *Id.* When a defendant is found guilty of a lesser-included offense, the significance of the indictment's language is necessarily diluted, and an application paragraph is needed to inform the jury of a different offense.

### 1. Simply stating "as included in the indictment" in either the application paragraph or the verdict form will not suffice to produce an express finding

First, to adopt the State's suggestion, where a single reference back to the indictment can constitute an express finding, would be inconsistent with our reasoning in *Lafleur*. There, we recognized the importance of repeating "deadly weapon" in the application paragraph for the lesser-included offense. *Id.* at 92. Unlike *Lafleur's* jury charge, this jury charge did not "explicitly and expressly require[ ] the jury to find that the defendant used a deadly weapon in the commission of the offense." *Id.* at 98. And for that reason, it falls below the *Lafleur* standard.

To say that the jury might possibly see mention of a deadly weapon only in connection with an offense of which the defendant was not found guilty presents too tenuous a connection between the indictment and the judgment. In light of *Polk*, I choose to give an *express* finding its plain meaning and require explicit deadly-weapon language to be seen by the jury in connection with the offense it found the defendant guilty of committing.

### 2. Including a deadly-weapon clause in the application paragraph for the greater offense highlights the absence of that clause in the application paragraph for the lesser-included offense

Additionally, the absence of a deadly-weapon clause in the application paragraph for the lesser-included offense is conspicuous given the presence of that clause in the immediately preceding application paragraph for the greater offense. If "as included in the indictment" were meant to suffice as a means to preserve the deadly-weapon allegation for the lesser-included offense, then why would the more potent "as charged in the indictment" not suffice to preserve the deadly-weapon allegation for the greater offense? It would be difficult to say that "as included in the indictment" secured consideration of the indictment's deadly-weapon clause, when "as charged in the indictment" necessitated the additional support of repeating the deadly-weapon clause: "by driving her motor vehicle, a deadly weapon." In other words, the inclusion of the deadly-weapon language in the application paragraph for the greater offense suggests that the omission of such language from the application paragraph for the lesser-included offense was not accidental. When "as included in the indictment" is the only means by which a jury can attach a deadly weapon to a lesser-included offense, I cannot identify an express deadly-weapon finding.

### 3. A motor vehicle is not a deadly weapon per se

Third, in *Lafleur*, the defendant was charged with using a firearm, a weapon named in the statutory definition of "deadly weapon." TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 2003). Here, Appellant was charged with using a motor vehicle as a deadly weapon, which is not part of the statutory definition. If, as in *Lafleur*, we have relied upon an application paragraph to say "deadly weapon," even when the weapon at issue was a deadly weapon per se, we cannot now say that a jury charge (the application paragraph for the lesser-included offense and the verdict form) can be completely devoid of deadly-weapon language when the weapon at issue—a motor vehicle—is not a deadly weapon per se.

### 4. Conclusion

My conclusion reaffirms *Polk* and *Lafleur* and simply limits the extent to which

an indictment can provide a basis for an express deadly-weapon finding for a lesser-included offense.[3] I would not extend *Lafleur* to allow an indictment to be the only source of that wording when a defendant is ultimately convicted of a lesser-included offense, not the offense charged in the indictment. Furthermore, I do not announce that the words "deadly weapon" must appear in the application paragraph necessarily, but that the jury should encounter those written words in association with the lesser-included offense somewhere in the jury charge at the guilt stage of the trial—either in the application paragraph or verdict form—so as to make an express finding pertaining to the lesser-included offense. Simply directing a jury to refer to the indictment by repeatedly stating, "as included in the indictment," does not produce an express deadly-weapon finding.

## V. Whether Appellant's punishment was properly enhanced to a third degree felony based upon the trial court's deadly-weapon affirmative finding

My resolution of Appellant's first issue determines the outcome of the second. Because the trial court's affirmative finding of a deadly weapon in the judgment was not proper, there was no basis for enhancing the punishment under section 12.35(c). Appellant's punishment could not properly have been enhanced to a third degree felony.

## VI. Conclusion

In conclusion, because the jury did not make an express deadly-weapon finding,

the trial court's entry of an affirmative finding was improper. Therefore, Appellant's punishment should not have been enhanced to a third degree felony. I would reverse the court of appeals and remand the cause to the trial court.

---

**3.** I do not question the effectiveness of the indictment in any other way aside from its role as a sole carrier of deadly-weapon language before a judgment of conviction for a lesser-included offense. It is well settled that "conviction for the lesser may be had under indictment for the greater." *Crosgrove v. State,* 37 Tex.Crim. 249, 39 S.W. 367 (1897); Tex Penal Code Ann. § 6.02(e) (Vernon 2003).