# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00305-CR

**Ben Chambless, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. D-1-DC-09-904125, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Ben Chambless guilty of criminally negligent homicide. *See* Tex. Penal Code Ann. § 19.05(a) (West 2011). Based on the jury's finding that Chambless used a firearm in the commission of this homicide, the trial court instructed the jury that the applicable term of imprisonment was that of a third-degree felony. *See id.* § 12.35(c)(1) (West 2011). The jury assessed punishment at eight years' confinement. In his sole point of error, Chambless claims that the trial court erred in instructing the jury that his punishment is enhanced to that of a third-degree felony because section 12.35(c)(1) of the Texas Penal Code does not apply to criminally negligent homicide. We affirm the judgment.

**BACKGROUND**

In the early morning of June 5, 2007, Chambless was woken by his wife and asked to investigate a noise coming from their front yard.[1] Chambless assumed that the sound was his neighbor Bryan Berg's dog because the dog had previously wandered onto Chambless's property. Chambless retrieved a semiautomatic rifle from his closet and proceeded to his front door. Unbeknownst to Chambless, Berg was on the property. Without turning on the outside lights or providing any warning, Chambless fired between three and five shots into his yard in an attempt to scare the dog away. The shots hit Berg in the head, chest, shoulder, elbow, and leg.

After firing the shots, Chambless heard a "gurgling noise" coming from the yard. He went back inside his house, put the rifle away, and turned on the outside lights. Chambless discovered Berg lying face down in the yard. Chambless's wife immediately called 9-1-1. Berg was pronounced dead at the scene. Investigators with the Travis County Sheriff's Office were immediately dispatched to the crime scene. Chambless told the investigators that he had not seen Berg prior to firing his rifle. The lead investigator testified that, given the lighting around the crime scene, Chambless may not have been able to see Berg from his front porch. Furthermore, Chambless told investigators that he did not fire his rifle in self-defense.

Chambless was indicted for manslaughter. *See* Tex. Penal Code Ann. § 19.04 (West 2011). At trial, the jury charge contained instructions for both manslaughter and the lesser included offense of criminally negligent homicide. *See id.* §§ 19.04, 19.05. The jury was given the following charge with regard to criminally negligent homicide:

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

2

> [If you believe that Chambless] did then and there with criminal negligence cause the death of [Berg] by shooting him with a firearm, and the defendant discharged multiple times in the dark without first determining whether someone was in the line of fire, then you will find the defendant guilty of Criminally Negligent Homicide and so say by your verdict.

*See id.* § 19.05.[2]  The jury acquitted Chambless of manslaughter but convicted him of criminally negligent homicide "as alleged in the indictment."  *See id.* §§ 19.04, 19.05.

Chambless elected to have the jury assess punishment.  The trial court instructed the jury that, because Chambless had been convicted of criminally negligent homicide with a deadly weapon, the authorized term of imprisonment the jury could impose was between two and ten years.  *See id.* § 12.35(c)(1) (requiring enhancement of punishment for state jail felony if defendant used deadly weapon).  Chambless did not challenge this instruction, and the jury assessed punishment at eight years' confinement.  Chambless now appeals his sentence.  He argues that, based on rules of statutory construction, his punishment for criminally negligent homicide cannot be enhanced based on his use of a deadly weapon.  Thus, Chambless claims that the trial court erred in instructing the jury that his punishment was enhanced to that of a third-degree felony.

## STANDARD OF REVIEW

Our review of an alleged error in a jury charge is based on a two-step inquiry.  First, we determine whether there was an error in the charge.  *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)).  Second,

---

[2]  The charge also defined "criminal negligence" and "deadly weapon" in accordance with the statute.  *See* Tex. Penal Code Ann. §§ 1.07(a)(17)(A), 6.03(d) (West 2011).

3

assuming that error existed, we determine whether the defendant properly preserved the error at trial. *Id.* at 350 (citing *Almanza v. State*, 668 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the error was properly preserved, reversal is required if there is "some harm" to the defendant. *Almanza*, 668 S.W.2d at 171. However, if the error was not properly preserved, the error must be "fundamental," meaning that it was "so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 668 S.W.2d at 171).

## DISCUSSION

Criminally negligent homicide is a state jail felony. Tex. Penal Code Ann. § 19.05(b). Section 12.35 of the Texas Penal Code establishes the punishment for state jail felonies as confinement in a state jail facility for not more than two years nor less than 180 days and a maximum fine of $10,000. *Id.* § 12.35(a)–(b). However, section 12.35 also includes the following enhancement provision:

> (c) An individual adjudged guilty of a state jail felony shall be punished for a third degree felony if it is shown on the trial for the offense that:
>
> (1) a deadly weapon as defined by Section 1.07 was used or exhibited during the commission of the offense or during immediate flight following the commission of the offense, *and* that the *individual* used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.

*Id.* § 12.35(c)(1) (emphasis added). Thus, a deadly weapon finding in a criminally negligent homicide conviction increases the punishment range to that of a third-degree felony. The sentence for a third-degree felony is imprisonment for not more than ten years nor less than two years and a maximum fine of $10,000. *See id.* § 12.34.

4

In his sole issue on appeal, Chambless argues that the trial court erred in instructing the jury that the applicable punishment for his conviction was that of a third-degree felony. Chambless claims that, under the rules of statutory construction, criminally negligent homicide must be construed as an exception to the enhancement provision in section 12.35. *See id.* §§ 12.35(c)(1), 19.05. Therefore, Chambless asserts, his punishment for criminally negligent homicide cannot be enhanced based on his use of a deadly weapon.

### Basis for statutory construction claim

Chambless argues that because "deadly weapon" is so broadly defined, all homicides necessarily involve the use of deadly weapons. *See id.* § 1.07(a)(17)(B) (West 2011). A deadly weapon is "anything that in the manner of its use is capable of causing death or serious bodily injury."[3] *Id.* Chambless explains that something "capable of causing death" must have been used in every homicide, given that a death actually occurred. Accordingly, Chambless argues that applying the enhancement provision to criminally negligent homicide would result in all criminally negligent homicides being automatically punished as third-degree felonies. *See id.* § 12.35(c)(1). He asserts that this "automatic-punishment enhancement" for all criminally negligent homicides would nullify the statutory definition of negligent homicide as a state jail felony. *See id.* § 19.05(b). Thus, Chambless claims that the two statutory provisions conflict, and that this conflict is irreconcilable.

---

[3] As the court of criminal appeals has acknowledged, "[o]ur cases make it clear that 'anything' [capable of causing death] means *anything*." *Guzman v. State*, 188 S.W.3d 185, 198 (Tex. Crim. App. 2006) (noting that cars, fists, belts, chains, and hot water can be deadly weapons) (internal citations omitted).

5

Furthermore, Chambless asserts that the criminally negligent homicide statute and the enhancement provision are *in pari materia*. *See id.* § 1.05(b) (applying Code Construction Act to Penal Code); Tex. Gov't Code Ann. § 311.026 (West 2005). Under the *in pari materia* rule of statutory construction, when two statutes irreconcilably conflict, the more specific provision operates as an exception to the more general provision. *See* Tex. Gov't Code Ann. § 311.026(b). Thus, Chambless claims that (1) the criminally negligent homicide statute conflicts with the enhancement provision for state jail felonies, (2) that this conflict is irreconcilable, and thus (3) criminally negligent homicide, as the more specific provision, operates as an exception to the enhancement provision. *See id.* Therefore, Chambless asserts, the trial court erred in instructing the jury that the enhancement provision applied to his conviction for criminally negligent homicide.

The issue raised in this case is not a simple one. Courts have struggled to reconcile the fact that criminally negligent homicide is classified as a state jail felony, but it appears to be automatically punishable as a third-degree felony. *See Crumpton v. State*, 301 S.W.3d 663, 664–65 (Tex. Crim. App. 2009); *see also Overstreet v. State*, No. 14-04-00875-CR, 2006 Tex. App. LEXIS 2614, at *13 (Tex. App.—Houston [14th Dist.] Mar. 23, 2006, pet. ref'd) ("Section 12.35(c)(1) of the Penal Code seems to render Section 19.05(b) of that same code nugatory.") (mem. op., not designated for publication). Before deciding the case on other grounds, our sister court of appeals in Fort Worth noted that "one wonders how criminally negligent homicide could ever be punished as a state jail felony." *Dunn v. State*, 176 S.W.3d 880, 884 (Tex. App.—Fort Worth 2005, no pet.). Nonetheless, we find that these two sections do not irreconcilably conflict, and thus criminally negligent homicide is not an exception to the enhancement provision. *See* Tex. Gov't Code Ann. § 311.026(a).

6

***Does* Crumpton v. State *support Chambless's claim?***

We first address the premise underlying Chambless's entire argument on appeal—that all homicides necessarily involve the use of a deadly weapon. Chambless relies heavily on the court of criminal appeals's language in *Crumpton v. State* to support this argument. 301 S.W.3d at 664–65. However, Chambless's reliance on *Crumpton* is misplaced.

In *Crumpton*, the court of criminal appeals affirmed the imposition of a ten-year prison sentence for criminally negligent homicide with a deadly weapon. *Id.* The issue presented in *Crumpton* was whether the jury's verdict of guilt "as included in the indictment" was sufficient to constitute a deadly weapon finding. *Id.* at 664. The divided court held that it was, but based its ruling on two separate rationales. *Id.* at 664–65. First, the court determined that the verdict included a deadly weapon finding because it referenced the indictment, and the indictment alleged that the offense was committed with a deadly weapon. *Id.* at 664. Second, the court concluded that "a verdict of homicide necessarily is a finding that a deadly weapon was used" because something used must have been "capable of causing—and did cause—death." *Id.* In this second rationale, the court found that a guilty verdict for homicide is itself a sufficient basis to conclude that the jury made an affirmative deadly weapon finding. *Id.* Furthermore, the court posed the following question: "In the face of such statutory requirements for deadly-weapon findings, how could a jury convict a defendant of homicide . . . *without* finding that a deadly weapon was used?" *Id.* at 665.

Chambless asserts that the second rationale in *Crumpton* inevitably leads to the conclusion that the enhancement provision of section 12.35 conflicts with the classification of criminally negligent homicide as a state jail felony. *Crumpton* did not address the potential conflict

between the enhancement provision and the negligent homicide statute. *See id.* at 664–66. However, *Crumpton* clearly affirmed the application of the enhancement provision to negligent homicide. *Id.* at 604. We cannot ignore the result that the court reached in *Crumpton*, nor can we conclude that the rationale in *Crumpton* supports the conclusion that this result was incorrect. To conclude otherwise would effectively create a paradox in which a precedent would overturn itself.

We are obliged to conform our opinions to those of the court of criminal appeals. *See State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006) ("As an intermediate court, we lack the authority to overturn the court of criminal appeals"), *aff'd sub. nom. State v. Colyandro*, 233 S.W.3d 870 (Tex. Crim. App. 2007). Therefore, even if we were to accept the proposition that all homicides necessarily involve the use of a deadly weapon, we nonetheless are required to conclude that the enhancement provision applies to criminally negligent homicide based on the result in *Crumpton*. 301 S.W.3d at 664-65; *see also DeLay*, 208 S.W.3d at 607.

### *Do all negligent homicides include use of a deadly weapon?*

Furthermore, despite the seemingly broad language in *Crumpton*, it is possible for a defendant to commit criminally negligent homicide without the defendant using a deadly weapon. *See* 301 S.W.3d at 664-65; *see also* Tex. Penal Code Ann. § 12.35(c)(1). While the court in *Crumpton* stated that a "verdict [of homicide] is necessarily a finding that a deadly weapon was used," it is clear from context that the court meant that every homicide necessarily *involves* a deadly weapon, not that all defendants necessarily "use or exhibit" deadly weapons. *See* 301 S.W.3d at 664-65. However, the enhancement provision of section 12.35 only applies when the defendant himself used a deadly weapon or had reason to know that a deadly weapon would be used. *See*

8

Tex. Penal Code Ann. § 12.35(c)(1). Therefore, if a defendant committed criminally negligent homicide but did not himself "use or exhibit" a deadly weapon, then he would only be punished for a state jail felony. *Id.*

For example, a person who commits criminally negligent homicide through an omission would not necessarily "use or exhibit" a deadly weapon.[4] *See, e.g.*, *Bustillos v. State*, No. 08-01-00467-CR, 2003 Tex. App. LEXIS 2364, at *1 (Tex. App.—El Paso Mar. 20, 2004) (mem. op., not designated for publication), *pet. dism'd, improvidently granted*, No. PD-1189-03, 2004 WL 3092750, at *1 (Tex. Crim. App. Sept. 29, 2004).[5] In *Bustillos*, a mother was convicted of criminally negligent homicide for abandoning her child outdoors. *Id.* at *5–6; *see also* Tex. Fam. Code Ann. § 151.001(a)(2) (West 2008) (imposing duty on parent to care for and protect child). The child died of hypothermia as a result of exposure to the cold. *Id.* However, while the cold weather could theoretically constitute a deadly weapon, under the facts presented, the mother could not have been found to have "used or exhibited" the cold weather herself. *See id.*; *see also Patterson v. State*, 769 S.W.2d 938, 940–41 (Tex. Crim. App. 1989) (defining "use" as putting into action or service, etc.). *But cf. Hill v. State*, 913 S.W.2d 581, 583–84 (Tex. Crim. App. 1996) (holding that in crime of omission, locks and chains were used as deadly weapons to prevent child from getting help).

---

[4] A person is criminally liable for an omission if he had a duty to perform an act and his failure to act caused the prohibited harm. *See* Tex. Penal Code §§ 1.07(a)(34); 6.01(c); *see also State v. Guevara*, 137 S.W.3d 55, 56-57 (Tex. Crim. App. 2004) (explaining criminal liability for omissions when legal duty to act exists).

[5] The court in *Bustillos* was not presented with the issue of whether a deadly weapon finding would have been appropriate. *See* 2003 Tex. App. LEXIS 2364. Accordingly, we do not cite *Bustillos* for its legal analysis, but merely as a factual illustration of a criminally negligent homicide in which a deadly weapon finding might not be appropriate. *See id.*

9

Thus, the enhancement provision did not apply in *Bustillos*, and the negligent homicide was punishable as a state jail felony. *See* 2003 Tex. App. LEXIS 2364 at *10; *see also* Tex. Penal Code Ann. §§ 12.35(c)(1), 19.05(b); Tex. Gov't Code Ann. § 311.026(a).

As the above example illustrates, not all homicides would support a deadly weapon finding, and thus not all criminally negligent homicides implicate the enhancement provision. *See* Tex. Penal Code Ann. § 12.35(c)(1). Therefore, the enhancement provision and the criminally negligent homicide statute do not conflict, given that the enhancement provision applies to some, but not all, negligent homicide convictions.[6] *Cf. Azeez v. State*, 248 S.W.3d 182, 192 (Tex. Crim. App. 2008) (citing *Mills v. State*, 722 S.W.2d 411, 414 (Tex. Crim. App. 1986)) (noting statutes irreconcilably conflict if they impose different punishments).

Therefore, we conclude that the enhancement provision does apply to criminally negligent homicide. Tex. Penal Code Ann. §§ 12.35(c)(1), 19.05. As we have explained, we are bound to conform our opinion to the holding in *Crumpton*, and therefore must conclude that the enhancement provision applies to negligent homicide. *See* 301 S.W.3d at 664-65; *DeLay*, 208 S.W.3d at 607. Additionally, we find that the provision defining criminally negligent homicide as a state jail felony does not necessarily conflict with the punishment enhancement for use of a deadly weapon. *See* Tex. Gov't Code Ann. § 311.012(a); Tex. Penal Code Ann. §§ 12.35(c)(1), 19.05(b). Given that the two provisions can be harmonized, we find that negligent homicide is not

---

[6] Because we find that these two statutes do not conflict, we do not reach the issue of whether they are *in pari materia*. *See Azeez v. State*, 248 S.W.3d 182, 191 (Tex. Crim. App. 2008) (noting that court must first determine whether statutes generally touch on same persons, subject matters, or purposes before applying *in pari materia* rule of statutory construction).

an exception to the enhancement provision. *See* Tex. Gov't Code Ann. § 311.026. Therefore, we find that the trial court did not err in instructing the jury that Chambless's punishment was enhanced in accordance with section 12.35(c)(1) of the Texas Penal Code. Because the jury instruction was not in error, we do not proceed to a harm analysis. Chambless's sole point of error is overruled.

## CONCLUSION

We affirm the judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   May 10, 2012

Publish