IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0769-12






BEN CHAMBLESS, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY





 Keasler, J., delivered the opinion of the Court, in which Keller, P.J., Meyers,
Price, Johnson, Hervey, Cochran, and Alcala, JJ., joined. Womack, J., not
participating.


O P I N I O N 



 Ben Chambless appeals from the court of appeals' judgment affirming his jury-assessed punishment of eight years' confinement for committing criminally negligent
homicide. We affirm the court of appeals' judgment that the jury instructions properly
defined the punishment range of a third-degree felony because there is no conflict between
the relevant statutes, the state-jail felony deadly-weapon punishment enhancement is
applicable to criminally negligent homicide, and its application is not contrary to legislative
intent. 

Trial

 The indictment charging Chambless with second-degree manslaughter alleged that he 
"recklessly cause[d] the death of . . . Brian Berg, by shooting him with a firearm which
[Chambless] discharged multiple times in the dark without first determining whether
someone was in the line of fire." The indictment also contained a separate deadly weapon
enhancement paragraph.

 On the night of the shooting, Chambless was awakened by his wife, who heard a noise
outside of their bedroom window. Chambless believed that the noise was coming from the
neighbor's dog, Happy, who had a habit of getting loose at night and causing mischief around
Chambless's house. Chambless retrieved his .22 caliber rifle with the intent of firing a few
rounds to scare off Happy. He stepped out of his house onto the dark porch and fired several
rounds towards the ground. Brian Berg was struck in the head, chest, shoulder, elbow, and
leg. Chambless heard a "gurgling noise."

 Chambless went back into the house, put the rifle away, got dressed, and went outside
again. When he turned his porch light on, he discovered Berg lying face down in the yard. 
Chambless's wife immediately called 911. Berg was pronounced dead at the scene. 
Chambless told investigators that he did not see Berg before firing the rifle. 

 In addition to the second-degree felony manslaughter (1) charge alleged in the
indictment, the trial judge's jury instructions charged the jury on the lesser-included state-jail
felony offense of criminally negligent homicide: (2)

 [If you believe beyond a reasonable doubt that Chambless] did then and
there with criminal negligence cause the death of [Berg] by shooting him with
a firearm, and the defendant discharged multiple times in the dark without first
determining whether someone was in the line of fire, then you will find the
defendant guilty of Criminally Negligent Homicide and so say by your verdict. 
But if you do not so believe, or if you have a reasonable doubt thereof, you
will acquit the defendant of the offense of Criminally Negligent Homicide and
so say by your verdict not guilty. . . .


 And it is further presented in and to said Court that a deadly weapon,
to wit: a firearm, was used of exhibited during the commission of the aforesaid
offense, and that [Chambless] used or exhibited the said deadly weapon. . . .

 

The jury acquitted Chambless of manslaughter, but convicted him of criminally negligent
homicide "as alleged in the indictment." The punishment-phase jury instructions did not
include the punishment range found in Texas Penal Code § 12.35(a)--a term of 180 days to
two years and a fine not to exceed $10,000. (3) Pursuant to § 12.35(c)(1), the instructions 
informed the jury that the punishment range for criminally negligent homicide with a deadly
weapon was a term of confinement between two and ten years, and a fine not to exceed
$10,000. (4) The jury assessed an eight-year term of confinement.

Court of Appeals

 In the court of appeals, Chambless claimed that the trial judge's jury instructions on
punishment erroneously stated the applicable punishment range was that of a third-degree
felony instead of the non-enhanced state-jail felony punishment range. The root of
Chambless's argument is that, because the term "deadly weapon" is so broad and includes
anything capable of causing death, every criminally negligent homicide will always be
punished as a third-degree felony. Chambless argued that, under the rules of statutory
construction, criminally negligent homicide must be construed as an exception to the deadly-weapon enhancement. Claiming a conflict exists between § 19.05(b) and § 12.35(c)(1),
Chambless maintained that the two sections cannot be reconciled and therefore, under the in
pari materia doctrine, § 19.05(b) should control because it is the more detailed and specific
provision. The court of appeals disagreed, finding that the two statutes did not conflict, § 
12.35(c)(1) properly applied, and not all criminally negligent homicides implicate the deadly-
weapon enhancement provision. (5)

 We granted Chambless's two intertwined grounds in his petition for discretionary
review: (1) whether the court of appeals erred in holding that the deadly-weapon
enhancement found in Texas Penal Code § 12.35(c)(1) applied to the offense of criminally
negligent homicide, and (2) whether the court of appeals erred in holding that not all
criminally negligent homicides include the use of a deadly weapon. In his petition for
discretionary review and brief to this Court, Chambless advances the same substantive
arguments asserted in the court below.

Analysis

 We agree with the court of appeals that § 19.05(b) and § 12.35(c)(1) do not conflict. 
Nor are the statutes in pari materia because they do not "deal with the same general subject,
have the same general purpose, or relate to the same person or thing or class of persons and
things." (6) Because the in pari materia doctrine is a rule of statutory construction seeking to
carry out the Legislature's intent, we give the statutes' purpose greater significance among
the factors in considering whether two statutes are in pari materia. (7) 

 The statutes' plain language and placement within the Penal Code is evidence of their
distinct purposes and subjects: one defines the offense, the other defines the offense's
punishment range. Section 19.05--found in Chapter 19, titled "Criminal
Homicide"--defines criminally negligent homicide as "caus[ing] the death of an individual
by criminal negligence." (8) Although classifying criminally negligent homicide as a state-jail
felony, it makes no mention of an applicable punishment range. (9) Section 12.35--in Chapter
12, titled "Punishments"--defines how state-jail felonies shall be punished. Section 12.35(a)
provides that state-jail felonies carry a punishment range of confinement for a term of 180
days to two years and a fine not to exceed $10,000. However, in instances where (1) a deadly
weapon was used or exhibited during the commission of the state-jail felony offense or
during flight following the offense, and (2) the defendant used or exhibited the deadly
weapon or was a party to the state-jail felony offense and knew that a deadly weapon would
be used or exhibited, § 12.35(c)(1) states that the particular state-jail felony for which the
defendant was convicted shall be punished by confinement for two to ten years and a fine not
to exceed $10,000. (10) Section 12.35(c)'s phrase "an individual adjudged guilty of a state jail
felony shall be punished for a third degree felony" means that, while the conviction is for a
state-jail felony, it is punishable as a third-degree felony. The elevated punishment does not
change the criminally negligent homicide's classification as a state-jail felony to a third-degree felony. (11) Therefore, because the statutes do not have the same purpose or deal with 
the same subjects, they are not in pari materia. Additionally, the statutes' plain language
does not reveal any conflict between the two statutes. 

 Chambless argues that, because a homicide by its nature involves a death, a guilty
verdict of criminally negligent homicide naturally implicates the use of a deadly weapon. 
And as a result, every criminally negligent homicide is automatically punishable as a third-degree felony despite the Legislature's intent that it be punished as a state-jail felony. 
Chambless's argument is unpersuasive. Chambless's argument assumes that when the
Legislature defined criminally negligent homicide as a state-jail felony, it intended to punish
every incident of this homicide variant by confinement of 180 days to two years and a fine
not to exceed $10,000. But the mere existence of § 12.35(c)(1) is evidence to the contrary. 
Further, to validate Chambless's assumption would require reading § 12.35(c)(1) out of the
statute and hold that its enactment was a useless act as it relates to criminally negligent
homicide--a finding we are not inclined to make. (12) 

 Chambless's premise that every criminally negligent homicide necessarily implicates
the use of a deadly weapon is also flawed. In support, Chambless relies on language found
in our Crumpton v. State opinion. (13) There, we stated "a verdict of homicide necessarily is
a finding that a deadly weapon was used. . . . Having found that the defendant was guilty of
homicide, the jury necessarily found that the defendant used something that in the manner
of its use was capable of causing--and did cause--death." The issue in Crumpton was the
propriety of the deadly-weapon finding in the judgment upon the jury finding Crumpton
guilty of criminally negligent homicide "as included in the indictment," which specifically
alleged the use of a deadly weapon. (14) We were not confronted with the arguments
Chambless presents in this case, nor did the Crumpton case present a situation in which an
indictment charged a defendant with criminally negligent homicide without specifically
including a deadly-weapon allegation within the elements describing the manner and means
of committing the homicide. As a result, the language on which Chambless relies was simply
an extension of the Court's reasoning: the deadly-weapon finding was proper because (1)
Crumpton's indictment specifically charged that he used a deadly weapon (a motor vehicle),
and (2) the jury's verdict, which referred to the indictment, necessarily included a finding that
he used a deadly weapon.

 As the present case demonstrates, a person may use or exhibit a "deadly weapon" (15)
in the course of committing criminally negligent homicide, but it is not necessarily so. The
three-judge concurrence joining the Crumpton majority recognized the distinction between
allegations of causing death by an act and by causing death from an omission. (16) Chambless's
argument overlooks the possibility of committing criminally negligent homicide by omission,
in which a deadly weapon may not be used at all. (17) If found guilty of criminally negligent
homicide in such a scenario, a defendant may face the non-enhanced state-jail felony
punishment range found in § 12.35(a). Even if we accepted Chambless's premise as valid--
that every criminally negligent homicide necessarily implicates the use of a deadly
weapon--it would be merely academic in this case because Chambless's use of a firearm was
uncontested and clearly satisfied § 12.35(c)(1). 

 We further understand Chambless's legislative-intent argument to maintain that §
12.35(c)(1) should not apply to criminally negligent homicide because doing so is contrary
to the Legislature's intended scheme in enacting § 12.35(c)(1). Although candidly
acknowledging his inability to cite any authority supporting his interpretation of the
Legislature's intent in enacting the provisions at issue, Chambless analogizes § 12.35(c)(1)
to Texas Code of Criminal Procedure Article 42.12, § 3g, which limits court-ordered
community supervision in cases in which there is an affirmative finding of a deadly weapon. 
Chambless refers us to Judge Maloney's concurrence in Tyra v. State, in which Judge
Maloney cited legislative materials relevant to the passage of Texas Code of Criminal
Procedure Article 42.12, § 3g, revealing the Article's overall purpose was to deter the
intentional use of firearms during the commission of crime and to send a message to
criminals to "leave the gun at home." (18) Applying the deadly-weapon enhancement to
criminally negligent homicides is incongruous, Chambless maintains, because the requisite
mental state of this type of homicide is criminal negligence, which by its definition, means
that the defendant did not contemplate committing a crime nor perceived a substantial and
unjustified risk of the circumstances. Chambless would have us ignore § 12.35(c)(1) in
criminally negligent homicides; it is a request we may not indulge. (19) The contested statutes
are not ambiguous nor contradictory, and applying § 12.35(c)(1) to criminally negligent
homicides does not lead to absurd results that the Legislature could not have possibly
intended. (20) The best evidence of the Legislature's intent is the plain language of the law it
passed. (21) And we need to look no further in rejecting Chambless's contention.

 We affirm the court of appeals' judgment. 


DELIVERED: October 23, 2013

PUBLISH
1. Tex. Penal Code § 19.04(b).
2. Id. § 19.05(b).
3. Id. § 12.35(a)-(b).
4. See id. § 12.35(c)(1) (providing, in relevant part, that if the defendant used or
exhibited a deadly weapon as defined by § 1.07 during the offense's commission, a state-jail felony shall be punished as a third-degree felony), § 12.34(a)-(b) (providing a
punishment range of a term of confinement of "not more than 10 years or less than 2
years," and a fine not to exceed $10,000).
5. Chambless v. State, 368 S.W.3d 785, 790-92 (Tex. App.--Austin).
6. See Jones v. State, 396 S.W.3d 558, 561 (Tex. Crim. App. 2013).
7. Id.
8. Tex. Penal Code § 19.05(a).
9. Id. § 19.05(b).
10. Id. §§ 12.35(c)(1), 12.34.
11. Goodrich v. State, 156 S.W.3d 141, 148-49 (Tex. App.--Dallas 2005, pet.
ref'd.).
12. See Crabtree v. State, 389 S.W.3d 820, 825 (Tex. Crim. App. 2012).
13. Crumpton v. State, 301 S.W.3d 663, 664 (Tex. Crim. App. 2010).
14. Id.
15. Tex. Penal Code § 1.07(a)(17) ("'Deadly weapon' means: (A) a firearm or
anything manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury; or (B) anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury.").
16. Crumpton, 301 S.W.3d at 666 (Hervey, J., concurring, in which Keasler and
Cochran, JJ., joined).
17. See Tello v. State, 180 S.W.3d 150 (Tex. Crim. App. 2005) (holding that the
failure to properly attach a trailer to a vehicle or to properly load that vehicle will sustain
a conviction for criminally negligent homicide).
18. Tyra v. State, 897 S.W.2d 796, 802-803 (Tex. Crim. App. 1995) (Maloney, J.,
concurring).
19. See Crabtree, 389 S.W.3d at 825.
20. See Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).
21. Id. at 785-86.