

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0125-14

---

### VERA ELIZABETH GUTHRIE-NAIL, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

---

KEASLER, J., filed a dissenting opinion in which HERVEY and YEARY, JJ., joined.

### DISSENTING OPINION

The central issue in this case is whether the judge, in accepting Vera Guthrie-Nail's

guilty plea and finding her guilty of conspiracy to commit capital murder as alleged in the

indictment  expressly alleging the use of a deadly weapon, has the discretion to nonetheless

withhold a deadly-weapon finding.  Looking solely to a distinguishable case and using a

series of inferential leaps, the Court is satisfied that he does.  The Court then incorrectly

approaches the *nunc pro tunc* judgment's propriety as if it were an issue of fact requiring a

remand to develop a factual record surrounding the new judgment's entry. Because I believe the Court errs in both respects, I dissent.

I.

The Court relies exclusively on *Hooks v. State*[1] to support its conclusion that judges may, at will, withhold deadly-weapon findings. But it is not particularly convincing on the issue that the Court uses it for. *Hooks* presented the Court with a case that required it to address the repercussions of the lack of entering a deadly-weapon finding. Hooks challenged the imposition of probation for the offense of aggravated assault by threat with a firearm, a deadly weapon *per se*.[2] We held that even if the judge "made" a deadly-weapon finding, the judge's failure to "enter" the judgment did not render Hook's probation void.[3] *Hooks* cannot support the weight the Court places on it. The opinion did not address whether the absence of a deadly-weapon finding in a judgment was proper nor did it involve a judgment *nunc pro tunc*. Instead, *Hooks* only addressed the consequences of judgments lacking a memorialized deadly-weapon finding. The Court withheld judgment on whether "the trial judge "simply declined to enter the additional affirmative finding in the judgment" and did not expand the grant of review to consider that separate question,[4] the exact proposition for which the Court

---

[1] *Hooks v. State*, 860 S.W.2d 110, 111 (Tex. Crim. App. 1993).

[2] *Id.* at 111.

[3] *Id*. at 113–14.

[4] *Id*. at 114, n.7.

cites this case. The Court's reading of *Hooks*, and the necessarily implication it finds within its logic, does not ring true, especially when the implication is something we expressly rejected addressing.

Moreover, before deciding *Hooks*, this Court decided *Ex parte Poe*.[5] There, we noted that Texas Code of Criminal Procedure article 42.12, § 3g(a)(2) requires a two-step process regarding deadly-weapon findings: (1) the trier of fact must make an affirmative deadly-weapon finding, and (2) the finding shall be entered into the court's judgment.[6] Once a deadly-weapon finding is made, the judge is statutorily obligated to enter the deadly-weapon finding in the judgment.[7] "The trial judge has no discretion to do otherwise. Consequently, the failure of the trial judge to do so was not an error of judicial reasoning but rather an error of a clerical nature."[8] Therefore, we held that entering a judgment *nunc pro tunc* to reflect what the factfinder—not necessarily limited to a jury—determined was proper.[9]

Furthermore, *Hooks*'s significance wanes in light of our more recent precedents. In *Ex parte Huskins*, the indictment alleged that Huskins "did then and there knowingly discharge a firearm at and in the direction of a vehicle, and [he] was then and there reckless

---

[5] 751 S.W.2d 873 (Tex. Crim. App. 1988).

[6] *Id.* at 875.

[7] *Id.* at 876.

[8] *Id.*

[9] *See id.*

as to whether the vehicle was occupied."[10]  After the judge adjudicated  Huskins's deferred adjudication, the court's judgment reflected a deadly-weapon finding.  Huskins complained that the deadly-weapon entry was improper.  When Huskins pleaded guilty to the deadly-conduct allegation, he confessed that he was the same person named in the indictment and that he committed the offense changed in the indictment.[11]  Although the case did not involve a judgment *nunc pro tunc*, we held that "[b]y properly admonishing [Huskins] and then accepting his guilty plea to the indictment, the trial court necessarily determined that [Huskins] used a deadly weapon in the commission of the offense," and the entry of the finding was proper.[12]

*Crumpton v. State*,[13] an authority noticeably absent from the Court's opinion, also limits the extent the Court wishes to stretch *Hooks*.[14]  *Crumpton* added to the "making" side of deadly-weapon findings.  It held that,

> If a deadly weapon is anything that is capable of causing death or serious bodily injury, and the indictment alleges that the defendant caused death or serious bodily injury, and the jury finds the defendant guilty as charged in the indictment, the verdict is necessarily a finding that a deadly weapon was

---

[10]  *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005).

[11]  *Id.*

[12]  *Id.* at 819–20.

[13]  301 S.W.3d 663 (Tex. Crim. App. 2009).

[14]  *See id.* at 668–69 (Keller, P.J., dissenting) (finding *Crumpton* "inconsistent with the reasoning in *Hooks v. State*.").

used.[15]

It follows that, after a finding of guilt for an offense defined by an indictment alleging the use of a deadly weapon, a deadly-weapon finding is necessarily made. Article 42.12, § 3g(a)(2) and *Poe* then require the deadly-weapon finding to be entered. The entry of a deadly-weapon finding is not a discretionary act; it must follow the making of a deadly-weapon finding.

The *Crumpton* logic follows that found in *Polk v. State*, noting that in some instances an affirmative finding will arise as a matter of law.[16] The *Polk* Court held that a trier of fact may make a deadly-weapon finding by virtue of simply convicting a defendant based upon an indictment that expressly contained and required a deadly-weapon finding.[17] "If the indictment by allegation specifically places the issue before the trier of fact . . . , then an affirmative finding is de facto made when the defendant is found guilty 'as charged in the indictment.'"[18] "If the trier of fact finds that a pistol has been used in the commission of the offense . . . , then it has found that a deadly weapon has been used since a pistol is a deadly weapon *per se*."[19] In this case, the trier of fact made a deadly-weapon finding as a matter of

---

[15] *Crumpton*, 301 S.W.3d at 665.

[16] *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985).

[17] *Id.*

[18] *Id.*

[19] *Id.*

law in adjudicating Guthrie-Nail guilty as charged in the indictment that specifically included the term "firearm"—a deadly weapon *per se*.[20]

To argue that the cases are reconcilable based on the trier of fact—judge versus jury—advances an artificial distinction between the two. In the present context, both are charged with deliberating on the evidence in determining guilt or innocence within the confines of the charging instrument containing the offense's statutory elements of the offense and descriptive averments. Furthermore, Article 42.12, § 3g(a)(2) itself does not differentiate between finders of fact. There is no manifest legislative intent from the statute's plain language that deadly-weapon findings and their entry operate differently depending on the trier of fact. The statute makes no mention of any discretionary role served by the presiding judge. It simply provides that once a deadly-weapon finding is made, it shall be entered in the judgment. And in the event that the deadly weapon was a firearm, that must also be entered.

## II.

Even assuming that *Hooks* permits judges to discretionarily withhold a deadly-weapon finding, the record does not suggest that is what happened here. The record as a whole establishes that the error corrected by the *nunc pro tunc* was clerical, not an impermissible judicial error.[21] The contested judgment's validity turns on whether the judge necessarily

---

[20] TEX. PENAL CODE § 1.07(a)(17).

[21] *See Ex parte Poe*, 751 S.W.2d at 876.

made an affirmative deadly-weapon finding contemplated by Article 42.12, § 3g(a)(2) when he accepted Guthrie-Nail's guilty plea and judicial confession to Count II and found her guilty of Count II as alleged in the indictment. The "N/A" that appeared in the original judgment's place designated for a deadly-weapon finding has an unexplained hold on the Court. The Court finds the "N/A" "seems to be an express determination that a deadly[-]weapon finding was *not* made."[22] However, this view falsely presumes that the "N/A" is not the clerical error the judge sought to correct in the first place by entering the judgment *nunc pro tunc*. The Court seemingly would affirm the judgment *nunc pro tunc* if the deadly-weapon finding was orally pronounced at Guthrie-Nail's sentencing.[23] Although a judge may, he does not need to orally pronounce a deadly-weapon finding in pronouncing sentence when the use of a deadly weapon is clear from the face of the indictment.[24] Why must an optional pronouncement be required to overcome the Court's exalted "N/A"?

I would find the judgment *nunc pro tunc* properly entered because the judge necessarily made a deadly-weapon finding, and therefore its entry was statutorily required. In the plea hearing, Guthrie-Nail responded affirmatively when the judge asked her, "Did you commit this crime just as it's set forth in Count II of this indictment?" The State offered Guthrie-Nail's judicial confession in which she confessed "to committing the offense of

---

[22] *Ante*, at 6 (emphasis in original).

[23] *Id.*

[24] *Ex parte Huskins*, 176 S.W.3d at 821.

conspiracy to commit capital murder exactly as charged in the charging instrument or as a lesser offense charged in the (Count II of the indictment)."[25] After admitting the State's evidence in support of the plea, the judge found "beyond a reasonable doubt that you [Guthrie-Nail] are guilty of the first[-]degree felony offense of conspiracy."

The repeated references to the indictment's Count II are telling in two ways. Count II specifically alleged capital murder as the object of the conspiracy, which by its definition requires the use of a deadly weapon.[26] Additionally, the indictment alleged that Guthrie-Nail agreed with her co-conspirators that one of their number would cause the death of Craig Nail and that the overt act performed involved Nail's death with a firearm, a deadly weapon *per se*.[27] The indictment's language and the present facts surrounding Guthrie-Nail's plea are distinguishable from those we have found insufficient to warrant a deadly-weapon finding.[28] Here, the indictment specifically alleged a deadly weapon *per se*, and the plea hearing contained a judicial finding that Guthrie-Nail was guilty beyond a reasonable doubt "as set forth in the indictment." Further, on the date of the plea, the trial docket sheet bears a notation germane to this case's question. In its original typeface and formatting, it contains

---

[25] Parentheses in original.

[26] *See Crumpton*, 301 S.W.3d at 664.

[27] TEX. PENAL CODE § 1.07(a)(17).

[28] *See, e.g.*, *Ex parte Dopps*, 723 S.W.2d 669 (Tex. Crim. App. 1986) (vacating the judgment *nunc pro tunc* adding a deadly-weapon finding because the manslaughter did not allege a deadly weapon *per se* nor particularly alleged the weapon was a deadly weapon by the manner of its use).

the following:

> **Sentence** (Judicial Officer: Rusch, Mark)
> 2. Conspiracy to Commit CAPITAL MURDER BY TERROR THREAT/OTHER
> FELONY (Conspired)
>     DC-Texas Dept of Criminal Justice - Prison
> Confinement to Commence 09/12/2012
>     50 Years , TDC, Department of Corrections
>     Deadly Weapon Finding 42.12

It is not dispositive of the issue, but including "Deadly Weapon Finding 42.12" on the docket sheet is additional evidence that, when viewed in the totality of the sentencing, strongly supports the conclusion that the judge made an affirmative deadly-weapon finding.[29] Although the indictment and judicial confession may not support a deadly-weapon finding on the direct liability theory under Article 42.12, § 3g(a)(2)—a finding that she personally used or exhibited a deadly weapon—it was sufficient under a vicarious liability theory. Section 3g(a)(2) also commands the deadly-weapon finding's entry if there is an affirmative finding that the defendant "was a party to the offense and knew that a deadly weapon would be used or exhibited." I find no impediment in imposing a deadly-weapon finding for the conspiracy offense as alleged in this indictment, an offense that imposes criminal culpability in a manner legally akin to vicarious or party liability.[30] I therefore would conclude that, by

---

[29] *See generally Stokes v. State*, 277 S.W.3d 20, 24–25 (Tex. Crim. App. 2009) (considering the trial judge's docket notation on the issue of presentment of a motion for new trial).

[30] *Compare* TEX. PENAL CODE § 15.02 ("Criminal Conspiracy") *with* TEX. PENAL CODE § 7.02 ("Criminal Responsibility for Conduct of Another"). *Accord Dowdle v. State*, 11 S.W.3d 233, 238 n.4 (Tex. Crim. App. 2000) (noting that a deadly-weapon finding would be authorized for a defendant when a co-conspirator used a deadly weapon

accepting Guthrie-Nail's guilty plea and judicial confession, the judge necessarily made an affirmative finding that Guthrie-Nail was sufficiently connected to the homicide and knew that a deadly weapon would be used.[31]  As a result, the judge properly corrected a clerical error in the original judgment by entering the judgment *nunc pro tunc*.

### III.

It is unclear what the Court hopes to gain by remanding.  Despite what is traditionally characterized as a question of law,[32] the Court treats the issue of this judgment's propriety as one that must be resolved by specific factual findings on remand.  By remanding, the Court necessarily assumes the judge did not enter the judgment *nunc pro tunc* for a proper purpose or understand the law.  Although it is content to suggest that placing a defendant on probation when a deadly-weapon finding would have precluded this punishment is some indication of the judge's intent to not make a deadly-weapon finding,[33] the Court does not find the entry of a deadly-weapon finding in the judgment *nunc pro tunc* equally informative. I suppose if the judge confesses that what purportedly was an attempt to fix a clerical error

during immediate flight and the defendant knew about it).

[31]  *See Ex parte Huskins*, 176 S.W.3d at 820 (finding that by accepting Huskins's guilty plea to the indictment, the judge necessarily determined that he used a deadly weapon in the commission of the offense).

[32]  *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. [Panel Op.] 1980); *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 405 (Tex. 1971); *Smith v. State*, 15 S.W.3d 294, 299 (Tex. App.—Dallas 2000, no pet.).

[33]  *Ante*, at 8 n.26.

was, in truth, a surreptitious change in his judicial reasoning, the judgment *nunc pro tunc* would stand in a very different light. In spite of this possibility's long odds, the Court converts what was designed to be an efficient method to fix a clerical error into needless post-conviction litigation and expenditure of judicial resources.

FILED: September 16, 2015

PUBLISH