

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00185-CR
No. 07-22-00186-CR

MICHAEL PAUL CONTRERAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 079837-E-CR & 079836-E-CR, Honorable Douglas R. Woodburn, Presiding

June 5, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant Michael Paul Contreras appeals his convictions for assaulting a public servant (trial court cause number 079836-E-CR) and possessing a deadly weapon in a penal institution (trial court cause number 079837-E-CR). The jury assessed punishment at seventy-five years' incarceration for each offense, to run concurrently. Additionally, the trial court entered a deadly weapon finding in cause number 079837-E-CR (possessing a deadly weapon in a penal institution). On appeal, appellant challenges the sufficiency

of the evidence to support the assault conviction and, by three issues, the propriety of the deadly weapon finding. We modify the judgment in cause number 079837-E-CR and affirm both judgments.

### *Background*

Two incidents are at issue here. The first involved appellant, an imprisoned felon, grabbing a prison guard, Ramos, by the collar of his uniform and pulling Ramos's hand through the food slot in the cell's door, at which time appellant bit Ramos's hand and pinkie finger. Ramos then felt appellant bite his hand "very hard," which bite lasted about three seconds. Upon Ramos's successfully removing his hand from the slot and after exclaiming "He bit me!" appellant uttered, "I'm going to kill you, bitch. Watch."

Ramos wore latex gloves at the time. Appellant's bite tore one glove and left Ramos with a small laceration on his pinkie finger and teeth impressions on the side of his hand. The area bitten necessitated minor medical care and remained painful for about a week. Ramos felt most of the pain "in [his] bone."

The second incident arose when appellant sought medical attention the morning after biting Ramos. As a corrections officer (Kauffman) arrived to deliver a medical request form, he saw appellant inside his cell waving his hand around. In addition to waiving his hand, appellant also threatened to cut Kauffman. Kauffman discovered that appellant held an object in his hand. The object was a sharpened piece of a plastic eyeglass lens, about two inches long and having a point. Upon the insistence of several officers, appellant eventually relinquished the object, which Kauffman described as a "shank" or "shiv." Such items generally were used to slice or stab. Testifying corrections

officers confirmed that the sharpened lens held by appellant could cause severe injuries or death.

A latter search of appellant's cell yielded other objects. One was another sharpened eyeglass lens. A sharpened plastic pen was the other.

The foregoing incidents resulted in appellant's convictions for the crimes mentioned in our opening paragraph. These appeals ensued.

***Issue One: Sufficiency of the Evidence—Assault on Public Servant***

Through his first issue, appellant contends that the evidence was legally insufficient to support the assault conviction. Allegedly, the evidence failed to establish that appellant bit Ramos. We overrule the issue.

One commits the offense of assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows to be a public servant while the public servant is lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. 22.01(a)(1), (b)(1). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *Id*. § 1.07(a)(8). It includes "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *See Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (en banc).

Appellant does not challenge the evidence establishing that he knew Ramos to be a public servant or that Ramos was lawfully discharging an official duty when the encounter occurred. Instead, he maintains that no more than a mere modicum of evidence indicates Ramos bit him. Yet, Ramos so testified. The jury was free to believe the officer and discredit appellant's contrary testimony. *See Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020) (stating that the jury is free to weigh the evidence and

3

determine whom to believe). So too was it free to believe the guard's testimony about experiencing pain for about a week after being bitten by appellant. Thus, some evidence appears of record upon which a rational factfinder could conclude, beyond reasonable doubt, that appellant assaulted a public servant. *See id.* at 855–56 (describing the standard of review when assessing the sufficiency of the evidence to support a conviction).

### Issue Four—Deadly Weapon Finding

The remaining issues deal with the deadly weapon finding entered in cause 079837-E-CR, i.e., the conviction for possessing a deadly weapon in a penal institution. The fourth issue is dispositive, and we address it.

Through Issue Four, appellant contends that the jury, as opposed to the court, was obligated to determine whether or not he used or exhibited the deadly weapon in some way when possessing it. Because it did not, the trial court was precluded from entering an affirmative finding on the matter. That affirmative finding nonetheless appears in the judgment under the category "Finding on Deadly Weapon." There, we see the statement "Yes, not a firearm." In entering it, the trial court allegedly erred. We sustain the issue.

When, as here, the jury determines both guilt and punishment, it is the proper factfinder to determine whether a defendant used a deadly weapon. *Walker v. State*, No. 05-13-01082-CR, 2014 Tex. App. LEXIS 11869, at *5 (Tex. App.—Dallas Oct. 29, 2014, no pet.) (mem. op., not designated for publication); *see Fann v. State*, 702 S.W.2d 602, 604 (Tex. Crim. App. 1986) (en banc) (acknowledging that the trial court may make the finding when it is the trier of fact). How the jury makes its affirmative findings underwent debate years ago. That led to our Court of Criminal Appeals specifying the ways it could

4

be done. Three were initially mentioned in *Lafleur v. State*, 106 S.W.3d 91 (Tex. Crim. App. 2003) (en banc). They were as follows: 1) through the trier of fact's verdict on the indictment when the indictment itself alleges the use of a deadly weapon; 2) when "the instrument used is a per se deadly weapon, such as a pistol or a firearm"; and 3) when the jury makes an affirmative finding through a deadly weapon special issue included in the jury charge. *Id.* at 95–96. These modes were intended to pretermit consideration of the facts of the case as a means of implying an affirmative finding from them. *Id.* To the foregoing, another avenue was added. It entailed consideration of the application paragraph of the indictment. If that paragraph "explicitly and expressly requires the jury to find that the defendant used a deadly weapon in the commission of the offense" and the jury finds the accused committed the offense, then it can be said the jury also found that a deadly weapon was used or exhibited in the crime's commission. *Id.* at 98.

Eventually, one other less explicit way was suggested by our Court of Criminal Appeals. It concerned the use of deductive reasoning. That is, in situations where there would be no way the accused could have been found guilty of the crime without having used or exhibited a deadly weapon, then an affirmative finding of a deadly weapon may be appropriate. *Duran v. State*, 492 S.W.3d 741, 747–48 (Tex. Crim. App. 2016), (explaining *Crumpton v. State*, 301 S.W.3d 663 (Tex. Crim. App. 2009)). But we say "may be appropriate" since, in *Duran*, the Court of Criminal Appeals also questioned the use of that method. *Duran*, 492 S.W.3d at 748. For purposes of this case, we assume *arguendo* that the deductive reasoning approach is a viable avenue and apply all five modes discussed above.

5

Though the State accused appellant, through the indictment, of possessing a deadly weapon, its use or exhibition was not elemental to conviction. Like the situation where a felon is not deemed to have used or exhibited a deadly weapon by simply possessing a firearm (a *per se* deadly weapon), *see Plummer v. State*, 410 S.W.3d 855, 865 (Tex. Crim. App. 2013) (noting that the deadly weapon must facilitate commission of the crime to support a deadly weapon finding since mere possession of it is insufficient), appellant could well have possessed the deadly weapon at bar without engaging in an act exemplifying use or exhibition. So, application of the deductive mode does not support the affirmative finding. Nor did the indictment or jury charge include allegations exceeding mere possession. In other words, none alluded to appellant's using or exhibiting the deadly weapon to facilitate his possession of it. And, that the use or exhibition of a deadly weapon was not presented to the jury via a special issue is also clear. Consequently, application of none of the modes contrived by the Court of Criminal Appeals illustrate that the jury affirmatively found appellant used or exhibited the deadly weapon while possessing it.

Indeed, the State concedes the absence of an express finding by the jury and argues it does not matter. This is purportedly so because appellant failed to preserve the debate for appeal by first broaching it below. We conclude otherwise for the following reason. A trial court has a *sua sponte* duty to sign and enter a proper judgment. *Mayes v. State*, 536 S.W.3d 102, 112 (Tex. App.—Amarillo 2017, pet. ref'd). In so holding, we viewed that obligation as relieving an appellant of raising before the trial court a complaint about its failure to enter a judgment comporting with the jury's verdict. *Id.* Determining whether appellant used or exhibited the deadly weapon fell within the bailiwick of the jury.

6

The latter made no such finding within its verdict.  Furthermore, the trial court had the *sua sponte* obligation to enter a verdict reflecting that.  To paraphrase Sam Mussabini, the trial court can't put in what the jury left out.[1]  In other words, it had the *sua sponte* duty to forgo entry of an affirmative deadly weapon finding.  By nonetheless entering it, the trial court's judgment failed to comport with the verdict.  So, appellant had no obligation to bring the mistake to its attention as a prerequisite to our consideration of the matter.

Having overruled appellant's first issue, we affirm the trial court's judgment in cause number 079836-E-CR.  Having sustained appellant's fourth issue, we delete from the trial court's judgment in cause number 079837-E-CR the affirmative deadly weapon finding; as modified, said judgment is affirmed.[2]

Brian Quinn
Chief Justice

Do not publish.

---

[1] CHARIOTS OF FIRE (Allied Stars Ltd & Enigma Prods. 1981) ("You can't put in what God's left out."– Sam Mussabini).

[2] Sustaining the fourth issue relieved us of the need to address issues two and three.