**Affirmed as Modified; Opinion Filed July 26, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00822-CR

**ANTWON CARTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-81511-2013**

# MEMORANDUM OPINION

Before Justices Myers, Stoddart, and Whitehill
Opinion by Justice Myers

A jury convicted appellant Antwon Carter of murder and assessed punishment at life imprisonment and a $10,000 fine. In a single point of error, appellant contends the trial court erred by allowing the State to introduce evidence that was more prejudicial than probative. As modified, we affirm the trial court's judgment.

### DISCUSSION

### 1. The DeSoto Cartridge Casing

Appellant's sole point of error is phrased as follows: "The trial court erred in allowing the State [to] introduce evidence that was more prejudicial than probative which was offered under Rule 404."

The indictment alleged that on or about January 18, 2013, appellant "did then and there

intentionally and knowingly cause the death of an individual, namely, Waddell Roberts, by shooting Waddell Roberts with a deadly weapon, namely: a firearm." As charged in this case, a person commits murder if he "intentionally or knowingly causes the death of an individual[.]" TEX. PENAL CODE ANN. § 19.02(b)(1). The offense is a first-degree felony. *Id*. § 19.02(c).

The evidence at trial showed that Waddell Roberts, also known as "Smooth," had been shot to death at the Red Rock Bar and Grill in Dallas, Texas, on January 8, 2013. He suffered gunshot wounds to the head, arm, chest, and abdomen. As part of the State's case in chief, Detective Kevin Moss of the Dallas Police Department Crime Scene Unit testified that police collected seven fired cartridge casings and one bullet fragment from the crime scene. He also testified that the gunshot wounds "appear[ed] to be consistent in size" with the caliber of bullet found at the crime scene. Ballistics testing showed that all of the casings were fired from the same gun.

During the detective's testimony, defense counsel objected out of the jury's presence as follows:

> So we are getting into the ballistics now with the officer. They are going to attempt to tie my client to those bullets with a shooting in DeSoto where he was a suspect. The reports that they have given me from DeSoto said there is nothing that ties my client to that shooting. Nothing. That is in the report. So before they even try to do that, I want to have a hearing outside of the presence to make sure that you are on board with what our position is, that they can't do it; and, therefore, that stuff isn't admissible.

The trial court ruled the State could not go into the DeSoto shooting "at this time." Later, after the defense cross-examined the lead investigator in the case, Dallas Police Detective Tim Stewart, regarding other potential suspects the police had ruled out, the State asked outside the jury's presence for the court to revisit its ruling on the DeSoto evidence because appellant had raised identity as an issue. The State argued it was not offering any evidence of the DeSoto offense, which was a deadly conduct case, but rather that a cartridge casing had been found at the

home that matched the casings found at the murder scene. Appellant objected that the evidence was not relevant and was more prejudicial than probative because he was not tied to the DeSoto offense. The trial court ruled it would allow testimony regarding the cartridge casing having been found "at the scene in DeSoto," but the witnesses could not testify as to "how it got there."

Britteny Cain, appellant's ex-girlfriend, testified that in September of 2011 she was living at a house located at 235 Avalon, in DeSoto, with her mother, sister, and two daughters. She testified that appellant knew she was living at 235 Avalon and had been to that address. She told the jury that at some point in December of 2012, a bullet casing was found at the house. A DeSoto police officer, Andrew Wood, testified that on December 17, 2012, he collected a cartridge casing from a DeSoto address, 235 Avalon, that he found in the driveway of the house, next to the garage, approximately ten feet from the front door. A forensic scientist in the firearms and toolmarks section of the Texas Department of Public Safety Crime Laboratory, James Jeffries, testified that he compared the DeSoto cartridge casing to the casings collected from the crime scene and that all of the casings were fired from the same firearm.

Appellant's argument is that the evidence of the cartridge casing found in Britteny Cain's driveway should not have been admitted because it was more prejudicial than probative. We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its decision to admit or exclude the evidence lies outside the zone of reasonable disagreement. *See Martinez*, 327 S.W.3d at 736; *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz*, 279 S.W.3d at 344.

Rule 403 provides that a trial "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted).

In considering a rule 403 challenge, courts balance (1) the inherent probative force of the evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation, with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, commonly, an emotional one, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *see also Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). We should reverse the trial court's balancing determination "rarely and only after a clear abuse of discretion." *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990).

Applying the rule 403 factors, the first factor favors admissibility because the evidence showed appellant's connection to the murder weapon and helped prove the identity of the

perpetrator of the offense. The State had a need for such evidence because it served to rebut the defensive theory that certain alternative suspects who may have been involved in the offense were overlooked by the police. As for the third factor, the prejudicial impact was minimal and the evidence was not so inherently inflammatory that it should have influenced the jury in some irrational but indelible way. *See Quesada v. State*, No. 04–04–00438–CR, 2006 WL 1993762, at *4 (Tex. App.—San Antonio July 19, 2006, pet. ref'd) (mem. op., not designated for publication) (evidence of shell casings found in defendant's bedroom that matched murder weapon did not amount to evidence that would impress the jury in some irrational but indelible way because spent shell casings were merely evidence of a discharged firearm); *see also Sargeon v. State*, No. 01–11–00146–CR, 2012 WL 761210, at *2 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, no pet.) (mem. op., not designated for publication). The fourth and sixth factors concern the tendency of the evidence to confuse or distract the jury from the main issues and the amount of time consumed by the presentation of the evidence. *See Gigliobianco*, 210 S.W.3d at 641. These factors likewise favor admissibility because the evidence in question did not take a significant amount of time at trial to develop and the presentation of the evidence was limited to avoid revealing the existence of any extraneous criminal offense. Cain did not testify that a gun had been fired at her or the residence; her testimony was that a shell casing was found in the driveway of her home. Likewise, Officer Wood testified that he collected a shell casing he found on the driveway; there was no testimony that a criminal offense had occurred. The fifth factor concerns a tendency of an item of evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence. *Id.* Evidence of the cartridge casing that was found in Cain's driveway was not prone to such a tendency because it concerned matters that were easily understandable by a jury. Moreover, the trial court included a limiting

instruction in the jury charge.[1]  Thus, the fifth factor also weighs in favor of admission.  For all of these reasons, we conclude that the probative value of the DeSoto cartridge casing evidence was not substantially outweighed by the danger of unfair prejudice.  *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42.  We overrule appellant's issue.

### 2. The State's Cross-Point

In a cross-point, the State argues that the judgment improperly omits a deadly weapon finding.  According to the State, the judgment should be modified to include a deadly weapon finding because the indictment alleged the use of a deadly weapon during the commission of the offense and the jury's guilty verdict was an implicit deadly weapon finding.

When the jury makes an affirmative deadly weapon finding, the trial court has a mandatory duty to enter a deadly weapon finding in the written judgment.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2); *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988).  A failure by the trial court to comply with this mandatory duty is a clerical error that can be corrected by a nunc pro tunc order of the trial court.  *See, e.g., Poe*, 751 S.W.2d at 876; *Asberry v. State*, 813 S.W.2d 526, 530 (Tex. App.—Dallas 1991, pet. ref'd).  "[I]f the indictment by allegation specifically places the issue before the trier of fact (i.e. ". . . by stabbing him with a knife, a deadly weapon . . . ."), then an affirmative finding is de facto made when the defendant is found guilty 'as charged in the indictment.'"  *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985); *accord Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2009); *Poe*, 751 S.W.2d at 875.

As described above, the indictment in this case alleged that appellant intentionally and

---

[1] The instruction was as follows:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any were committed, and even then you may only consider the same in determining motive, opportunity, intent, preparation, plan, knowledge, identity, to rebut a defensive theory, and for no other purpose.

knowingly caused the death of an individual by shooting him with a deadly weapon—a firearm. Additionally, the record shows that the jury found appellant guilty of murder "as charged in the indictment." Based on this record, we conclude the jury made an affirmative finding of a deadly weapon. *See Crumpton*, 301 S.W.3d at 664; *Poe*, 751 S.W.2d at 875; *Polk*, 693 S.W.2d at 394; *Brightmon v. State*, Nos. 05–13–01371–CR, 05–13–01372–CR, 05–13–01373–CR, and 05–13–01374–CR, 2015 WL 3653235, at \*5 (Tex. App.—Dallas June 12, 2015, no pet.) (mem. op., not designated for publication); *Truong v. State*, No. 05–13–00939–CR, 2014 WL 5449747, at \*13 (Tex. App.—Dallas Oct. 28, 2014, no pet.) (mem. op., not designated for publication).

"Appellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to correct the judgment appears in the record." *Asberry*, 813 S.W.2d at 529 (modifying trial court's judgment to include jury's affirmative finding of use of a deadly weapon); *see also* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Because the necessary information appears in the record before us, we modify the judgment of conviction to include a deadly weapon finding. *See Asberry*, 813 S.W.2d at 529–30. Accordingly, we (1) delete the portion of the trial court's judgment that states "N/A" under the heading "Findings on Deadly Weapon," and (2) add the words "YES, A FIREARM" under that heading. *See id*.

As modified, we affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140822F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTWON CARTER, Appellant

No. 05-14-00822-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 296-81511-2013.
Opinion delivered by Justice Myers. Justices Stoddart and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"FINDINGS ON DEADLY WEAPON:  N/A" should be changed to "FINDINGS ON DEADLY WEAPON:  YES, A FIREARM."

As **REFORMED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects these modifications.

Judgment entered this 26th day of July, 2016.